**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| BERYL MCCRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:17-cv-2918-JPM-cgc |
| v. | ) | |
| | ) | |
| FEDERAL EXPRESS CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

## ORDER GRANTING DEFENDANT FEDERAL EXPRESS CORPORATION'S MOTION FOR SUMMARY JUDGMENT

---

This employment discrimination case is before the Court on Defendant Federal Express Corporation's (hereinafter "FedEx") Motion for Summary Judgment filed on February 17, 2020. (ECF No. 56.)  Defendant moves the Court pursuant to Federal Rule of Civil Procedure 56 to grant summary judgment in its favor.  (Id.)  FedEx contends that, based on the evidence presented, Plaintiff Beryl McCray "cannot state a *prima facie* case of race, sex, and religion discrimination and retaliation."  (Id. at PageID 174.)  Additionally, FedEx asserts that Plaintiff cannot prove that FedEx's legitimate, nondiscriminatory reasons for its actions were a pretext for unlawful discrimination.  (Id.)  Finally, FedEx asserts that Plaintiff cannot obtain punitive damages, back pay or front pay because she cannot prove that she was constructively discharged. (Id.)

McCray filed her Response on March 26, 2020.  (ECF No. 61.)  McCray asserts that not only has she met her burden to demonstrate a prima facie case of race, gender, and religious

discrimination under Title VII, but she also can demonstrate that FedEx's legitimate, nondiscriminatory reasons for the disciplinary actions taken against her were a pretext for race, gender, and religious discrimination.  (See generally ECF No. 61-1.)  Additionally, McCray asserts that she was constructively discharged when she resigned from FedEx.  (See id. at PageID 368–70.)

FedEx filed its Reply on April 9, 2020.  (ECF No. 62.)  FedEx argues (1) that McCray's Response is "void of any admissible evidence highlighting comparators who were treated more favorably by FedEx," (2) that McCray's Response violate the parties' agreement as to the nature of the operative claims in the case and does not comply with the Local Rules, and (3) that McCray cannot establish "but-for" causation with respect to her claims of retaliation.  (Id. at PageID 535–39.)

For the reasons set forth below, FedEx's Motion for Summary Judgment is **GRANTED**.

## I.    UNDISPUTED FACTS

The following facts are not disputed for purposes of summary judgment.

### A.    McCray's Position with FedEx, McCray's Religious Beliefs, and McCray's Prison Ministry.

Plaintiff Beryl McCray is sixty-one years old.  (Scheduling Order, ECF No. 51 at PageID 155.)  She is an African American female.[1]  (ECF No. 61-1 at PageID 366.)  McCray was employed as an information agent at the FedEx "Hub" at the Memphis International Airport. (Scheduling Order, ECF No. 51 at PageID 155.)  As information agent, McCray ensured the proper check out and return of scanning and portable electronic equipment used by FedEx Hub

---

[1] In Plaintiff's Response, she identifies as "female and black."  (ECF No. 61-1 at PageID 366.)

2

employees.  (Id.)  McCray had several supervisors at FedEx.  (Id.)  These included Robin Simpson, the manager of the equipment room at the Hub, and Wendy Retherford, one of McCray's immediate supervisors.  (Id.)

McCray is an ordained member of the clergy at the Mt. Pisgah Baptist Church and is involved with the church's prison ministry.  (McCray Statement of Facts ("McCray SOF"), ECF No. 61-2 at PageID 386.)  Through her prison ministry, McCray partners with the Volunteer Services Department and the Chaplain at Shelby County Division of Corrections to provide worship services and other volunteer services to incarcerated women.  (Id.; FedEx Statement of Facts ("FedEx SOF"), ECF No. 56-2 at PageID 196.)  As part of her faith, McCray believes that the Bible requires her to visit and minister to the incarcerated.  (McCray SOF, ECF No. 61-2 at PageID 386; FedEx SOF, ECF No. 56-2 at PageID 197.)  McCray's religious beliefs do not require her to perform her prison ministry duties on certain days.  (McCray SOF, ECF No. 61-2 at PageID 386; FedEx SOF, ECF No. 56-2 at PageID 197.)  According to Bassil G. Brooks, the pastor of her church, McCray and other members of the church may participate in the Church's ministries "when their [personal] schedules allow."  (FedEx SOF, ECF No. 56-2 at PageID 197; McCray SOF, ECF No. 61-2 at PageID 386.)  The Shelby County correctional facilities where McCray performs her ministry set the schedule for visitation and volunteer services, not members of the church's ministry.  (McCray SOF, ECF No. 61-2 at PageID 386; FedEx SOF, ECF No. 61-2 at PageID 197.)  Aside from scheduling limitations imposed by the prison facilities, church doctrine did not require McCray to attend or perform her prison ministry on any particular month or on any specific day; she could choose any convenient day to perform her ministries, with the caveat that the prison had control over visitation.  (FedEx SOF, ECF No. 56-2 at PageID 197; McCray SOF, ECF No. 61-2 at PageID 386.)

**B.      FedEx's July 2015 Discipline of McCray**

McCray's claims arise out of a series of disciplinary incidents and several leave-time requests dating back to July 2015.  (FedEx SOF, ECF No. 56-2 at PageID 198; McCray SOF, ECF No. 61-2 at PageID 387.)  On June 15, 2020, McCray spoke with Wendy Retherford to request a personal day on July 2, 2015 to visit her son in Atlanta, Georgia.  (FedEx SOF, ECF No. 56-2 at PageID 198; McCray SOF, ECF No. 61-2 at PageID 387.)  On June 18, 2015, in an email to McCray, Retherford denied the request.  (FedEx SOF, ECF No. 56-2 at PageID 198; ECF No. 61-2 at PageID 387; Deposition of Beryl McCray ("McCray Dep."), ECF No. 56-6 at PageID 309, Exh. 46.)  Retherford informed McCray that calling in the night before to inform FedEx of an unauthorized absence from work was "not the proper procedure" and directed McCray to submit an exception request with "documentation as to why you need this day."[2] (FedEx SOF, ECF No. 56-2 at PageID 198; McCray SOF, ECF No. 61-2 at PageID 387; ECF No. 56-6 at PageID 309, Exh. 46.)

On June 18, 2015, McCray submitted her exception request to FedEx Hub Senior Manager Frank Olson.  (FedEx SOF, ECF No. 56-2 at PageID 198–99; McCray SOF, ECF No. 61-2 at PageID 387.)  On June 19, 2015, Olson informed McCray that her request "for an exception to exceed our plan for the maximum number of Information Agents to be scheduled off for the third shift operation" would be denied; the "plan number" only allowed 4 information agents to be off on a single day.  (FedEx SOF, ECF No. 56-2 at PageID 199; McCray SOF, ECF No. 61-2 at PageID 387; McCray Dep., ECF No. 56-6 at PageID 307.)  McCray called in the

---

[2] McCray does not dispute that a conversation took place, but she asserts that "[i]n addition to Defendant's Material Fact No. 21, . . . McCray was unable to come in and called two hours prior to her shift or according to policy informing them that she was unable to come in.  She knew that the time she would be taking would be okay. This practice of calling in two hours prior to a shift at [FedEx] was a common practice and employees did it all the time without discipline."  (McCray SOF, ECF No. 61-2 at PageID 387.)

night before to announce her absence and did not appear for work on July 2, 2015.  (McCray

Dep., ECF No. 56-6 at PageID 308, Suspension Letter, Exh. 45.)

On July 8, 2015, FedEx suspended McCray with pay pending the outcome of its

investigation into whether McCray violated FedEx's 2-5 Acceptable Conduct Policy.[3]  (FedEx

SOF, ECF No. 56-2 at PageID 198; McCray SOF, ECF No. 61-2 at PageID 387.)  On July 13,

2015, FedEx concluded its investigation and issued a Warning Letter after finding that McCray

violated FedEx's Acceptable Conduct Policy.[4]  (McCray Dep., ECF No. 56-6 at PageID 310,

Exh. 47.)

### C.   McCray's December 2015 Request for "Sabbatical Leave," FedEx's Religious Accommodation Policy, and FedEx's Denial of her Request.

The second leave-time request at issue in this case occurred on or about December 16,

2015.  (FedEx SOF, ECF No. 56-2 at PageID 197; McCray SOF, ECF No. 61-2 at PageID 386.)

McCray, with support from a letter written by Pastor Bassil Brooks, requested "Sabbatical

Leave" from December 28, 2015 to January 18, 2016.  (FedEx SOF, ECF No. 56-2 at PageID

197; ECF No. 61-2 at PageID 386.)  McCray requested Sabbatical Leave to take time to

participate in her church's prison ministry.  (McCray Dep., ECF No. 56-6 at PageID 315.)

FedEx maintains a Religious Observances policy as part of the "People Manual (USA)."

(Declaration of Sonia D. Walker, Exh. A, ECF No. 56-4; McCray SOF, ECF No. 61-2 at PageID

385.)  The policy allows FedEx employees like McCray to request time off for religious

observance.  (ECF No. 56-4 at PageID 205.)  The policy also provides that "[w]hen religious

---

[3] FedEx's 2-5 Acceptable conduct Policy sets the procedures regarding investigations into and discipline of employees for violations of FedEx policy.  (ECF No. 56-6 at PageID 254–67.)

[4] McCray does not dispute this fact but does assert that in addition to the stated fact, "similarly situated employees were permitted to call in to work as Ms. McCray did on that instance and yet were not subjected to discipline including suspensions."  (ECF No. 61-2 at PageID 388.)

observance is granted, employees may use vacation, floating holidays, personal days, or time off without pay."  (Id.)

On December 16, 2015, McCray submitted her religious observance request to Wendy Retherford.  (McCray Dep., ECF No. 56-6 at PageID 315, Exh. 55.)  Retherford informed McCray via email that all of her "Vacation, Personal, and FH must be exhausted before requesting PNP."[5]  (Id. at PageID 317, Exh. 56.)  Retherford stated, "In addition, I will need to get approval for December 28, 2015, December 31, 2015, and January 18, 2015, this will exceed my planned off limit."[6]  (Id. at PageID 317–18.)  McCray responded by questioning why she had to use her vacation days first when requesting leave, and if the policy on such usage had changed.  (McCray Dep., ECF No. 56-6 at PageID 318.)  Retherford responded by providing a copy of FedEx's 1-55 Leave of Absence (Personal) Eligibility policy, which left to the discretion of management "[g]ranting of personal leaves without pay."  (See id. at PageID 317.)

Retherford reached out to McCray on December 21, 2018 to inform her that her request for leave would "not be considered until [McCray] exhausted all of [her] PTO (paid time off)." (McCray Dep., ECF No. 56-6 at PageID 319, Exh. 57 (emphasis in original).)  Retherford indicated that she would be "glad to work with [McCray] on rescheduling [her] vacation and [her] floating holiday for the dates requested," at which point she could resubmit her request. (Id.)  Retherford followed up with a second email on December 22, 2015 indicating the same and

---

[5] "PNP" refers to "Personal Not Paid" days.  (See ECF No. 56-6 at PageID 318.)  "FH" refers to "floating holidays."  (See FedEx SOF, ECF No. 56-2 at PageID 197.)

[6] McCray disputes in her Statement of Facts that "Retherford informed Ms. McCray that she was going to be short staffed based on employees['] previously approved time off."  (McCray SOF, ECF No. 61-2 at PageID 386.)  The email in which Retherford stated that allowing McCray to take off December 28, 31, and January 18 would "exceed [her] planned off limit" references the "plan off" number of four referenced in connection with McCray's request for time off on July 2, 2015.  See supra Sec. I.B.  Retherford highlighted this line in the email. (See McCray Dep., ECF No. 56-6 at PageID 317–18, Exh. 56.)  Retherford also provided a chart detailing how she would be required to take the days off and which requested day "Exceeds Planned off."  (Id.)

responding to McCray's inquiry as to why she had to use all her paid leave days that "personal not paid days are only approved in extenuating circumstances." (Id. at PageID 313, Exh. 53.) On December 24, 2016, FedEx manager Robin Simpson once again informed McCray that she would need to use paid time off before she could request her Sabbatical Leave. (Id. at PageID 320, Exh. 62.) Robin Simpson indicated that after speaking with Roy Isaksen, her senior manager, and FedEx Human Resources ("HR") employee Janice Glenn, McCray's request did not meet the "guidelines for Religious Observances" and that the use of her remaining "3 Vacation days and/or 1 Personal day" could be used only unless "no more than 4 IA's [Information Agents] will be scheduled off on any one day." (Id.) McCray then responded by asserting that she was entitled to the time off under FedEx's Religious Observance policies, as she had been for over fifteen years, and that "the policy states, only at the discretion of the employee should any accrued, personal, floating holidays or vacation days be utilized." (Id.)

### D.   McCray's Discipline in January of 2017 and the FedEx Time Card Policy and her Resignation

In 2017, McCray was disciplined for failing to comply with FedEx's Time Card policy. (FedEx SOF, ECF No. 56-2 at PageID 199; McCray SOF, ECF No. 61-2 at PageID 388.) McCray was informed of FedEx's "Time Card Policy as early as August 6, 2013." (FedEx SOF, ECF No. 56-2 at PageID 199; McCray SOF, ECF No. 61-2 at PageID 388.) Time Card Policy 3-92 requires that all Hub employees use the "Nettime clock," and that each employee "clock in and out in the location designated to you by your manager." (McCray Dep., ECF No. 56-6 at PageID 327, Exh. 76.) The policy also states that "[i]t is not acceptable to use other clocks around the hub, away from your work area, to clock in and out." (Id.) McCray signed the document on August 6, 2013, indicating that she "read and underst[ood] the content of this policy." (Id.)

FedEx issued McCray her first warning letter for not using the appropriate time clock on January 16, 2017.[7]  (FedEx SOF, ECF No. 56-2 at PageID 199; McCray SOF, ECF No. 61-2 at PageID 388.)  The warning letter indicated that FedEx had investigated the matter and had concluded that McCray had clocked in and out at the wrong location on twenty-two separate workdays between December 6, 2016 and January 6, 2017.  (McCray Dep., ECF No. 56-6 at PageID 324, Exh. 73.)  In response to the letter, McCray provided a list of reasons for her non-compliance with the Time Card policy, including that she was never told that she was clocking in at the wrong location by her supervisor Robin Simpson and that the "clocks in the work area generally are inoperable."  (Id. at PageID 326.)  McCray's supervisor Robin Simpson sent an email reminding McCray and other employees that they are expected to clock in and out each day at their assigned work location.  (Id. at PageID 328.)

On March 10, 2017, McCray was suspended with pay pending the results of an investigation into whether she violated FedEx's 2-5 Acceptable Conduct Policy.[8]  (ECF No. 56-5 at PageID 207; FedEx SOF, ECF No. 56-2 at PageID 200; McCray SOF, ECF No. 61-2 at PageID 388.)  On March 13, 2017, McCray retired from her position at FedEx.  (McCray Dep., ECF No. 56-6 at PageID 329.)  She stated that "the time has come for me to start my retirement and spend more time pursuing my new career."  (Id.)

## II.    PLAINTIFF'S CLAIMS

---

[7] McCray does not dispute Fact 26 of FedEx's Statement of Facts and asserts that, "[i]n addition to Defendant's Material Fact No. 26" McCray "denied any wrongdoing because the clocks in her designated area were not working . . . ."  (McCray SOF, ECF No. 61-2 at PageID 388.)  Additionally, McCray asserts that other individuals who worked at the same work area as McCray were not required to use the time clock.  (Id.)

[8] McCray does not dispute that she was suspended without pay for her time-clock issues, but she asserts that "in addition," on March 8, 2007, "McCray completed a NET Time Exception Form explaining the problems she was having with the clock and that she was at work timely."  (McCray SOF, ECF No. 61-2 at PageID 388.)

Plaintiff filed her first pro se Complaint on December 19, 2017.  (ECF No. 1.)  She then filed an pro se Amended Complaint on July 12, 2019.  (ECF No. 37.)  On August 13, 2019, Plaintiff obtained counsel.  (ECF No. 41.)

Although Plaintiff has not since amended her pro se Amended Complaint, the parties agree that Plaintiff asserts the following claims against FedEx[9]: (1) that FedEx engaged in unlawful religious discrimination in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") when it denied her request for Sabbatical Leave to perform her prison ministry services in December of 2016 and January 2017  (ECF No. 37 at PageID 122; ECF No. 56-1 at PageID 177 n.1);  (2) that FedEx discriminated against her based on her race and gender in violation of Title VII  (ECF No. 37 at PageID 123–25; ECF No. 56-1 at PageID 177 n.1); (3) that FedEx unlawfully retaliated against her for engaging in protected activities in violation of Title VII[10]  (ECF No. 56-1 at PageID 177 n.1); and (4) that McCray was constructively discharged when she retired/resigned on March 13, 2017.  (Id.)

---

[9] FedEx asserts in its Memorandum that "the parties' attorneys have met and conferred to narrow the issues raised in Plaintiff's *pro se* Complaint and Amended Complaint for purposes of summary judgment."  (ECF No. 56-1 at PageID 177 n.1.)  FedEx asserts that the parties agree that "the June 19, 2015 and January 16, 2017 Warning Letters and the issues surrounding McCray's December 2015 and December 2016 requests for Religious Sabbaticals are the operative events underlying her Title VII claims of discrimination and retaliation."  (Id.)  McCray's Response did not challenge these characterizations.

[10] McCray's pro se Amended Complaint asserts a claim for sexual harassment.  (See ECF No. 37 at PageID 123–24.)  The Amended Complaint asserts that in connection with the alleged harassing behavior she did not "receive accommodations from Defendant for unwelcome sexual harassment, during the period of April 3, 2015-September 23, 2015," and that FedEx failed to prevent her harasser from entering her office.  (Id. at PageID 124.)  McCray's Response to the Motion for Summary Judgment discusses these events in connection with her claims of retaliation and constructive discharge.  (See ECF No. 61-1 at PageID 368–69, 379.)  The Court construes this evidence of harassment as background evidence of either retaliation or constructive discharge, as McCray's Response supports the finding that Plaintiff has abandoned those claims.  See Brown v. VHS of Michigan, Inc., 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."); see also Lucier v. City of Ecorse, No. 12–CV–12110, 2014 WL 1260651, at *24 (E.D. Mich. Mar. 27, 2014) (finding that the failure to respond to a claim in a motion for summary judgment is waived).  Plaintiff Counsel's agreement with Defense Counsel that the claims did not include a claim for sexual harassment further supports the conclusion that Plaintiff is not pursuing these claims, especially given that Plaintiff did not file a Second Amended Complaint per this Court's Order.  (See Email Correspondence, ECF No. 62-1; see also Amended Scheduling Order, ECF No. 51 at PageID 156.)  Additionally, McCray's EEOC Charge, which referenced the events

## III.     LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense."  Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party."  Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir. 2014) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact."  Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  Mosholder, 679 F.3d at 448–49; see also Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.  "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper."  Martinez v. Cracker Barrel Old Country Store, Inc., 703 F.3d 911, 914 (6th Cir. 2013) (quoting Chapman v. UAW Local 1005, 670 F.3d 677,

---

from 2015 to 2016, does not assert a claim for sexual harassment independent of her claims for retaliation and discrimination.  (See ECF No. 1-1.)  McCray has therefore failed to exhaust her administrative remedies and cannot proceed with her harassment claim because her allegations of sexual harassment cannot reasonably arise out of the discrete actions alleged in her EEOC charge.  See Kuhn v. Washtenaw Cty., 709 F.3d 612, 627 (6th Cir. 2013) ("[I]nclusion in an EEOC charge of discrete acts of discrimination to support a claim of disparate treatment cannot, standing alone, support 'a subsequent, uncharged claim of hostile work environment unless the allegations in the complaint can be reasonably inferred from the facts alleged in the claim.'" (quoting Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010))); see also Smith v. Hendersonville Hosp. Corp., NO. 3–15–670, 2017 WL 264927, at *3 (M.D. Tenn. Jan. 20, 2017) (finding that a claim for harassment could not be reasonably inferred from plaintiff's EEOC charge alleging discrete acts of discrimination).

680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); see also Kalich v. AT&T

Mobility, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by

"citing to particular parts of materials in the record," "showing that the materials cited do not

establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot

produce admissible evidence to support the fact."  Bruederle, 687 F.3d at 776 (alterations in

original) (quoting Fed. R. Civ. P. 56(c)(1)); see also Mosholder, 679 F.3d at 448 ("To support its

motion, the moving party may show 'that there is an absence of evidence to support the

nonmoving party's case.'" (quoting Celotex, 477 U.S. at 325)).  "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge[.]"  Martinez, 703 F.3d at 914 (alteration in original) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  "The court need consider only the

cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

"[T]he district court has no 'duty to search the entire record to establish that it is bereft of a

genuine issue of material fact.'"  Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F.

App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531

(6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir.

2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to

require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a

matter of law.'"  Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir.

2015) (quoting Liberty Lobby, 477 U.S. at 251–52).  Summary judgment "'shall be entered'

against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing

11

that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08 CV 02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)).  "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251).  "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present 'affirmative evidence' to support his/her position."  Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247–254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)).  "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)).  Statements contained in an affidavit that are "nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient.  See Mitchell, 964 F.2d at 584–85.

## IV.    ANALYSIS

### A.    Constructive Discharge

For a resignation to qualify as a constructive discharge, the "employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." Moore v. KUKA Welding Sys. & Robot Corp., 171 F.3d 1073, 1080 (6th Cir. 1999).  The court must examine both the "employer's intent and the employee's objective feelings . . . ." Logan v. Denny's, Inc., 259

12

F.3d 558, 568 (6th Cir. 2001).  "Whether a reasonable person would feel compelled to resign" is

a fact-intensive inquiry, and courts look for the presence of following factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4)
> reassignment to menial or degrading work; (5) reassignment to work under a
> younger supervisor; (6) badgering, harassment, or humiliation by the employer
> calculated to encourage the employee's resignation; or (7) offers of early
> retirement or continued employment on terms less favorable than the employee's
> former status.

 Id. at 569 (quoting Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000)).

The record does not support the conclusion that FedEx constructively discharged McCray

when she submitted her retirement letter on March 13, 2017.  (See McCray Dep., ECF No. 56-6

at PageID 329.)  The Warning Letters issued to McCray indicate that "[a] repeat of this or any

other behavioral problem may result in more severe disciplinary action up to and including

termination."  (See McCray Dep., ECF No. 56-6 at PageID 310, Exh. 47; PageID 324.)  These

Warning Letters indicate FedEx's dissatisfaction with McCray's compliance with FedEx policy,

and generally, absent compelling circumstances, "the manner in which an employer criticizes an

employee's job performance, such as attendance, is insufficient to establish constructive

discharge." Plautz v. Potter, 156 F. App'x 812, 818 (6th Cir. 2005); see also Smith v.

Henderson, 376 F.3d 529, 534 (6th Cir. 2004) ("The above-described actions involve the manner

in which the USPS supervised and/or criticized Smith's job performance and assigned job duties

to her, actions which normally are insufficient to establish a constructive discharge as a matter of

law.").  This Court has also held that language identical to the language contained in McCray's

Warning Letters is by itself insufficient to indicate an employer's present intent to force an

employee to quit or resign.  See Sands v. Jackson State Cmty. Coll., No. 1-03-1333-T-AN, 2006

WL 1174469, at *10 (W.D. Tenn. Apr. 26, 2006) (finding that a warning letter's language that

"further disciplinary action will be taken, up to and including termination" was not sufficient

because "a plaintiff cannot show constructive discharge merely on the basis of her own belief or suspicion that she might [someday] be terminated").  The Sixth Circuit as well as district courts have also held that receipt of a warning letter for misconduct that "could result in [the plaintiff's] termination" if a second complaint or warning letter was issued does not support a claim for constructive discharge absent further evidence of the employer's intent to force the plaintiff to resign.  See, e.g., Goldfaden v. Wyeth Labs., Inc., 482 F. App'x 44, 48 (6th Cir. 2012); see also Plautz, 156 F. App'x at 814, 818 (warning letters and other disciplinary actions related to "criticisms of his performance or attendance" were insufficient to prove constructive discharge, and the "threat to review [the plaintiff's records to look for a justification to terminate him . . . is too speculative to support the conclusion that [the plaintiff's] firing was imminent"); Pittington v. Great Smoky Mountain Lumberjack Feud, LLC, 213 F. Supp. 3d 951, 962 (E.D. Tenn. 2016) (employee's receipt of a written warning and employer's requirement that he attend counseling after violating company policy did not constitute constructive discharge).

Additionally, the record does not provide any instances in which FedEx threatened McCray with a demotion, reduction in salary, reduction in job responsibilities, reassignment to menial work, or offer of early retirement.  Nor does the record demonstrate that FedEx or its employees engaged in "badgering harassment, or humiliation . . . calculated to encourage the employee's resignation . . . ."  Logan, 259 F.3d at 568.  That FedEx criticized, warned, and disciplined McCray for failing to follow the Time Card Policy is not sufficient to demonstrate that she was constructively discharged.  See Kinamore v. EPB Elec. Util., 92 F. App'x 197, 205 (6th Cir. 2004) (the plaintiff was not constructively discharged after receiving a three-day suspension and receiving several other disciplinary infractions because such actions did not demonstrate that the employer "sought to compel her resignation").

14

McCray's Response asserts that a compendium of harassing behavior forced her to resign.  (See ECF No. 61-1 at PageID 369–70.)  McCray asserts that her resignation was motivated in part by the several alleged incidents of sexual harassment that occurred approximately two years before she retired, the harassing behavior exhibited by FedEx employees in connection with the Time Card violations, and other instances of discriminatory actions taken against her by FedEx employees.  (Id.)

Allegations of harassment and discrimination are generally not enough by themselves to prove constructive discharge; in addition to such allegations the plaintiff must demonstrate other "aggravating factors" to support a claim for constructive discharge.  Collettee v. Stein-Mart, Inc., 126 F. App'x 678, 681–82 (6th Cir. 2005) (quoting Yates v. Avco Corp., 819 F.3d 630, 637 (6th Cir. 1987)).  "[T]he fact that plaintiff may have proven a hostile work environment is not enough by itself to prove constructive discharge . . . ."  Moore, 713 F.3d at 1080.  In addition to the objective inquiry that assesses whether "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign," Smith v. Henderson, 376 F.3d 529, 533–34 (6th Cir. 2004) (quoting Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)) (internal citations and quotation marks omitted), the plaintiff must provide either direct or circumstantial proof demonstrating the employer's intent to create the hostile work environment with the aim of causing the employee's resignation.  Collette, 126 F. App'x at 682.

McCray cannot demonstrate how any such harassing conduct was intended to cause her resignation.  Assuming the truth of her allegations of sexual harassment for the purposes of her constructive discharge analysis (see, e.g., McCray Dep., ECF No. 61-8 at PageID 430–32; ECF No. 61-9 at PageID 511), nothing in the record suggests that the disciplinary actions taken

15

against McCray or reprimands from her supervisors evidence FedEx's intent to cause McCray's resignation.  Id. at 682.  McCray has failed to provide proof of the operative question in the constructive discharge analysis: whether FedEx deliberately created intolerable working conditions to force her to resign or quit.  Moore, 171 F.3d at 1080; see also Mitchell v. Int'l Bhd. of Teamsters, No. 08-2767, 2010 WL 11603058, at *11 (W.D. Tenn. Aug. 13, 2010) (finding that an individual who alleged that she was subjected to retaliatory conduct, gender-based discrimination and "badger[ing]" conduct by her employers could not meet the Logan factors and failed to demonstrate "severe conduct" for purposes of a constructive discharge analysis); Campbell v. CCL Custom Mfg., Inc., No. 03-2789B, 2006 WL 222814, at *11 (W.D. Tenn. Jan. 30, 2006) ("While Campbell does allege harassment, he offers no argument or support for the conclusion that the harassment was designed to encourage his resignation . . . ."); Shoap v. City of Crossville, 321 F. Supp. 3d 839, 848 (M.D. Tenn. July 23, 2018) (finding that "occasional offensive utterances" were not enough to demonstrate a workplace "'permeated with discriminatory intimidation that compelled' Shoap to resign").

In summary, the Court finds that McCray has not created a genuine dispute of material fact as to whether she was constructively discharged when she resigned from FedEx.

### B.      Title VII Race and Gender Discrimination

#### 1.      Applicable Law

A plaintiff may prove a claim of race or gender discrimination under Title VII with either direct or circumstantial evidence. See Evans v. Walgreens Co., 813 F. Supp. 2d 897, 917 (W.D. Tenn. 2011) (citing Barrett v. Whirlpool Corp., 556 F.3d 502, 514 (6th Cir. 2009)).  Courts apply the McDonnell Douglas/Burdine burden-shifting framework to circumstantial evidence cases.

16

Barrett, 556 F.3d at 515.  In order to demonstrate a prima facie case of discrimination, the plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that she was treated differently than similarly-situated employees from outside the protected class.  Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006).  Once the plaintiff has made this showing, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for its actions.  Chen v. Dow Chem. Co., 580 F.3d 394, 400 (6th Cir. 2009).

Once the defendant meets its burden of production, the burden shifts back to the plaintiff to demonstrate pretext, that is, that the "employer's explanation was fabricated to conceal an illegal motive."  Id.  Pretext may be demonstrated by showing that the defendant's legitimate, non-discriminatory reason "(1) had no basis in fact, (2) did not actually motivate defendant's conduct, or (3) was insufficient to warrant the challenged conduct."  Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 258 (6th Cir. 2002).  A reason cannot be shown to be a pretext for racial or gender discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).  To survive summary judgment, the plaintiff must "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation" for its actions. Chen, 580 F.3d at 400.

### 2.    Adverse Employment Action Analysis

The Court first finds that McCray's 2015 and 2017 suspensions *with* pay and her 2017 resignation do not qualify as adverse employment actions.  It is well settled that a "suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an

adverse employment action." Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 803 (6th Cir. 2004) (en banc) (emphasis in original); see also Sensabaugh v. Halliburton, 937 F.3d 621, 629 (6th Cir. 2019) ("Several panels of this court have determined that a suspension with pay does not constitute an adverse action."). McCray's resignation does not qualify as an adverse employment action because she cannot prove that she was constructively discharged. See Laster v. City of Kalamazoo, 746 F.3d 714, 718 (6th Cir. 2014) (finding that a failure to prove constructive discharge prevented the plaintiff from showing he suffered an adverse employment action for purposes of his Title VII race discrimination claim); see also Campbell, 2006 WL 222814, at *11 (same).

FedEx does not dispute that the 2015 and 2017 Warning Letters it issued to McCray were adverse employment actions. (See Memorandum, ECF No. 56-1 at PageID 188.) McCray's Response does not specifically identify other adverse employment actions apart from the Warning Letters.[11] (See Response, ECF No. 61-1 at PageID 375–75, 379.) Therefore, the Court will analyze these two Letters as the operative adverse employment actions.

### 3.     McCray's Comparators

McCray has failed to meet her burden as to prong four of the prima facie case. Under prong four, the plaintiff must demonstrate that the "defendant treated differently employees who were similarly situated but were not members of the protected class." Leadbetter v. Gilley, 385 F.3d 683, 690 (6th Cir. 2004). Although a plaintiff "need not demonstrate an exact correlation" between themselves and the similarly situated employee who received better treatment from the

---

[11] As stated infra, McCray's denial of an accommodation was not in and of itself an adverse employment action. Her claim that she was denied a nightshift transfer also does not constitute an adverse employment action. See infra note 18.

defendant, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'"  Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994)) (emphasis in original) (internal quotation marks omitted).  For example, comparators should be those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  See O'Donnell v. City of Cleveland, 838 F.3d 718, 727 (6th Cir. 2016) (quoting Pierce, 40 F.3d at 802) (internal quotation marks omitted).  That said, "[t]here is no specific list of factors that [the court] must consider in making this determination."  Tennial v. United Parcel Serv., Inc., 840 F.3d 292, 304 (6th Cir. 2016).  The court makes an "independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee."  Ercegovich, 154 F.3d at 352.  The court also should not take an "exceedingly narrow" formulation of the similarly situated requirement.  Jackson v. FedEx Corp. Servs., Inc., 518 F.3d 388, 396 (6th Cir. 2008) (quoting Ercegovich, 154 F.3d at 352).

McCray identifies three specific comparators in connection with her time-off and Time Card policy violations.  (See, e.g., Response to Mot., ECF No. 61-1 at PageID 358–59; PageID 379–80.)  These include: (1) Miles James, a "minister/bible teacher" who was "allowed to attend conferences"; (2) Jeff Matlock, a "minister of music"; and (3) Reginald Thompson, who "performed revivals, worship, and bible study."  (Id. at PageID 380.)  She alleges that these men were "permitted to take time off for religious purposes," and that FedEx allowed them to do so "without paid time" and did not discipline them for doing so.  (Id. at PageID 379–80.)

Additionally, McCray asserts that they "were doing the same thing as Ms. McCray" without receiving the same treatment.  (Id. at PageID 380.)

McCray's deposition testimony does not sufficiently demonstrate that these men were similarly situated to McCray.  See Ercegovich, 154 F.3d at 352.  McCray's testimony demonstrates that Miles James, Jeff Matlock, and Reginald Thomas were all provided shift changes and were otherwise accommodated for their religious practices, but McCray's testimony does not demonstrate how these men qualify as comparators for purposes of the adverse employment actions taken against her, that is, the Warning Letters issued after McCray took a personal day in violation of FedEx policy and after McCray violated FedEx's Time Card policy.[12]  (See McCray Dep., ECF No. 61-9 at PageID 507–08, 512–34.)  McCray offers no evidence that the men identified in her deposition testimony were not disciplined after they called in the night before taking an unauthorized personal day.  Nor has McCray demonstrated that these men were not disciplined after repeated violations of the FedEx Time Card Policy or other similar FedEx corporate policies.

McCray also provides Mike Douglas as a comparator for purposes of her January 2017 Warning Letter.  (See McCray Dep., ECF No. 61-9 at PageID 509.)  McCray testified that Douglas was supervised by Robin Simpson and that Douglas also had experienced issues using the new NET Time Card system instituted by FedEx in 2013.  (Id.)  McCray testified that she recalled Douglas telling her of one instance in which he had to have his time corrected after he was unable to punch in after lunch or at some other time during the workday.  (Id.)  The fact that

---

[12] Although McCray may assert a claim for failure to accommodate her religious beliefs under Title VII in connection with denial of Sabbatical Leave, denial of her accommodation does not constitute an adverse employment action.  Her denial of leave did not cause a "materially adverse change in the terms of her employment," and religious accommodation claims require proof of an independent adverse employment action.  See Reed v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., 569 F.3d 576, 581 (6th Cir. 2009).  These men can only be offered as comparators for a religious accommodation/discrimination claim, given that the only characteristic they share with McCray is their requested religious accommodations.

Douglas on one occasion experienced issues with his timecard does not make him similar in all relevant aspects to McCray.  See Ercegovich, 154 F.3d at 352.  McCray's testimony does not demonstrate that Douglas repeatedly violated the Time Card policy but was not issued a warning letter or was not disciplined in some other way.  See supra Sec. I.B. Undisputed Facts.  (See McCray Dep., ECF No. 56-6 at PageID 324; see also McCray SOF, ECF No. 61-2 at PageID 388.)  Douglas's one-time violation would not be an act of "comparable seriousness" with McCray's violations because McCray violated FedEx's Time Card policy over twenty times during the months of December 2016 and January 2017.  Wright v. Murray Guard, Inc., 455 F.3d 702, 710 (6th Cir. 2006) ("In the disciplinary context, we have held that to be found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of '*comparable seriousness*.'" (quoting Clayong v. Meijer, Inc., 291 F.3d 605, 611 (6th Cir. 2002)) (emphasis in original)).

In summary, the Court finds that McCray has failed to meet her burden of demonstrating a prima facie case of racial or gender-based discrimination in violation of Title VII.  She has failed to demonstrate that FedEx treated McCray differently from similarly situated employees outside of her protected class.

### C.    Title VII Religious Accommodation Claim

Title VII's prohibition against religious discrimination "imposes upon employers a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship[.]'"  Reed v. Int'l Union, United Auto., Aeropsace & Agr. Implement Workers of Am., 569 F.3d 576, 579 (6th Cir. 2009) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75 (1977)).  In order to meet her burden of proving a claim for failure to provide a religious accommodation, the plaintiff must first establish

a prima facie case of religious discrimination.  Id.; see also Tepper v. Potter, 505 F.3d 508, 514

(6th Cir. 2007).  To make out a prima facie case, the employee must demonstrate: (1) "[she]

holds a sincere religious belief that conflicts with an employment requirement"; (2) "[she] has

informed the employer about the conflict"; and (3) "[she] was discharged or disciplined for

failing to comply with the conflicting employment requirement."  Reed, 569 F.3d at 580 (quoting

Tepper, 505 F.3d at 514.)  The discipline or discharge suffered by the employee cannot be one

and the same with the employer's provision of an unreasonable accommodation or its denial of a

reasonable accommodation.  See id. at 581.

　　　If the plaintiff establishes a prima facie case, the burden shifts to the employer to

demonstrate that "it could not reasonably accommodate the employee without undue hardship."

Tepper, 505 F.3d at 514 (quoting Virts v. Consol. Freightways Corp., 285 F.3d 508, 516 (6th Cir.

2002)).

　　　McCray arguably has met prongs one and two of her prima facie case.  Construing all

inferences in favor of McCray, a reasonable jury could find that McCray held a sincere religious

belief and that her prison ministry, which was part and parcel with that belief, conflicted with her

workday requirements in December 2015 and January 2016.  McCray, however, cannot

demonstrate that she was "discharged or disciplined" as a result of failing to comply with the

FedEx policy.  Reed, 569 F.3d at 580.  McCray admits that although she disagreed with using

paid vacation and holiday time to take Sabbatical Leave in December 2015 and January 2016,

she ultimately took some of that time off in accordance with FedEx policy.  (See McCray Dep.,

ECF No. 56-6 at PageID 248:7-14.)  Aside from FedEx's refusal to allow her to take unpaid time

off before using her paid time off, FedEx did not discipline McCray in connection with her

request for a religious accommodation.  See Reed, 569 F.3d at 580 ("We have declined to relieve

22

a religious accommodation plaintiff of [her] burden to establish a prima facie case, including the requirement that [she] demonstrate that [she] has been discharged or disciplined.").  A reasonable jury also could not conclude that the Warning Letter issued in connection with McCray's Time Card violations was motivated by her request for a religious accommodation, which occurred over a year after McCray's request for Sabbatical Leave.[13]  See supra Sec. I; see also infra Sec. D.

McCray asserts that it was discriminatory and unreasonable for FedEx to require McCray to "utilize her paid time for her religious practices when she could have chosen to use it somewhere else" and that "[t]his failure to accommodate took away rights and privileges that Ms. McCray had."  (See Response, ECF No. 61-1 at PageID 376.)  This does not qualify as proof of "discharge or discipline."  See Tepper, 505 F.3d at 514 (finding that a claim for failure to provide religious accommodation failed because the fact that the plaintiff was required to take unpaid leave for religious services instead of paid leave to avoid work on the Sabbath did not demonstrate "discipline or discharge"); see also Reed, 569 F.3d at 581 ("Other than the accommodation itself, the reasonableness of which he challenges, Reed cannot point to any action by UAW that has adversely affected his employment.").  The Sixth Circuit in Reed indicated that the concept of "discharge or discipline" is narrower than the concept of "adverse employment action" for purposes of a standard Title VII discrimination claim.  See id. at 580–81. Although the court ultimately did not reach the question of "whether a plaintiff can proceed on a showing of an employment action that is 'adverse' but is not a form of 'discharge or discipline,'" the court concluded that the plaintiff's failure to demonstrate that he had suffered an adverse

---

[13] The Warning Letter from July 2015 occurred before her request for a religious accommodation.  See supra Undisputed Facts, Sec. I.B.

employment action in connection with the religious accommodation request was fatal to his prima facie case.[14]  Id.  Reed's holding supports the Court's conclusion that McCray cannot demonstrate that she suffered an adverse employment action as a result of her request for an accommodation.  Therefore, she cannot demonstrate "discipline or discharge" for purposes of her prima facie case.

Even assuming McCray had met her burden of demonstrating a prima facie case of religious discrimination, FedEx's requirement that its employees use accrued paid time and paid vacation days before using unpaid leave is a reasonable accommodation.  Courts across the country have held that requiring an employee to use paid vacation time for religious observances is a reasonable accommodation.  See, e.g., Lee v. ABF Freight Sys., 22 F.3d 1019, 1022 (10th Cir. 1994) (finding that an employer's policy permitting a Jewish employee to use two weeks of vacation time to accommodate Sabbath observance was an adequate accommodation); Getz v. Pennsylvania Dep't of Pub. Welfare, 802 F.2d 72, 72 (3d Cir. 1986) (finding that the defendant's scheduling requirement that an employee use vacation days for religious observance was a reasonable accommodation because the plaintiff was able to "worship fully" under the policy); Miller v. Port Auth. Of New York & New Jersey, 351 F. Supp. 3d 762, 782 & 782 n.13 (D.N.J. 2018) ("The courts have also held that an employer may require an employee to use vacation days or take unpaid leave, without running afoul of the reasonableness requirement.").

The Sixth Circuit has found that in some circumstances the use of accrued vacation time is not a reasonable accommodation, and that such a requirement may support a prima facie case

---

[14] This court has, on occasion, held that a warning letter or threat of discipline, which otherwise may not rise to the level of adverse employment action, qualifies as discipline.  See, e.g., Jackson v. Longistics Transp., Inc., No. 11–2093-STA, 2012 WL 1252543, at *10 (W.D. Tenn. Apr. 13, 2012).  Unlike these cases, McCray was not disciplined in connection with her request for time for religious observances, nor did she receive a warning letter for requesting time off for her prison ministry.

of religious discrimination.  See Goldmeier v. Allstate Ins. Co., 337 F.3d 629 (6th Cir. 2003); see

also Cooper v. Oak Rubber Co., 15 F.3d 1375 (6th Cir. 1994).  In Cooper v. Oak Rubber Co., the

Sixth Circuit found that an employer failed to reasonably accommodate an employee who

requested an accommodation to take off Saturday for church services when it required the

employee to use all accrued vacation days to avoid working on Saturday.  15 F.3d at 1379.  The

Sixth Circuit recognized that the "use of vacation time legitimately may be required to allow an

employee to avoid work on religious holidays, or, in combination with other methods, to allow

an employee to regularly avoid working on the Sabbath," and that, "[u]nder appropriate

circumstances, this use of a portion of an employee's vacation entitlement may be reasonable."

Id. (citing Getz, 802 F.2d at 72; United States v. Albuquerque, 545 F.2d 110, 113–14 (10th Cir.

1976)).  The court found that such an accommodation was unreasonable in the plaintiff's case

because "Cooper was faced with the choice of working on the Sabbath or potentially using all of

her accrued vacation to avoid doing so."  Id.  The court held, "[a]n employer who permits an

employee to avoid mandatory Sabbath work *only* by using accrued vacation does not 'reasonably

accommodate' the employee's religious beliefs."  Id.  (emphasis added).  In doing so, the

employer discriminated against religious employees by requiring them to forfeit a "substantial

benefit" available to non-religious employees.  Id.

      In Goldmeier v. Allstate Ins. Co., the Sixth Circuit reaffirmed its holding in Cooper.  337

F.3d at 634.  It explained that in some situations, "where the conflict between an employee's

religious belief and an employer's requirement can only be removed by the employee's forfeiture

or expenditure of a substantial benefit available to other employees, . . . that conflict [is]

sufficient to establish a prima facie religious discrimination case exists."  Id.  It found that

requiring the employees to use "either their own funds or their limited office expense allowance" in place of work on the Sabbath satisfied prongs one and two of the prima facie case.  Id.

McCray's case is distinguishable from Cooper and Goldmeier.  McCray was not required *only* to use paid vacation time as part of its religious observances policy; FedEx only required McCray to use her vacation days and floating holiday time *before* she could make use of her available unpaid leave.  See Cooper, 15 F.3d at 1379.  (See McCray Dep., ECF No. 56-6 at PageID 313, Exh. 53; PageID 319, Exh. 57; PageID 320, Exh. 62.)  McCray could have taken additional unpaid days off after she had exhausted her paid vacation and floating holiday days.  Cf. id. ("Cooper was faced with the choice of working on the Sabbath or potentially using all of her accrued vacation to avoid doing so.").  (Id.)  FedEx's requirement that its employees use their paid leave before using any unpaid leave is also different in kind than the employer's requirement in Goldmeier, which forced the plaintiffs to choose between "violating the Sabbath or hiring outside staff using either their own funds or their limited office expense allowance, otherwise available for other business-enhancing purposes to other agents."[15]  337 F.3d at 634.

The Third Circuit's decision in Getz v. Commonwealth of Pennsylvania Department of Public Welfare (which the Sixth Circuit in Cooper cited favorably for the proposition that requiring employees to use paid vacation time may be a reasonable accommodation) is particularly instructive in McCray's case.  See Cooper, 15 F.3d at 1379.  The Third Circuit in Getz found that that a public employer's requirement that its employees use vacation days to accommodate its employees' religious observances was a reasonable accommodation and represented a "neutral scheduling policy."  802 F.2d at 74.  Just as the plaintiff in Getz, McCray "wants to have her religious holidays and keep her vacation days as well," which is not

---

[15] Just as in McCray's case, the plaintiffs in Goldmeier failed to demonstrate that they were "discharged or disciplined" in connection with their accommodation request, which was fatal to their claim.  337 F.3d at 634–35.

something required of employers by Title VII.  Id. (citing 42 U.S.C. § 2000e(j)).  The Third

Circuit agreed with the Tenth Circuit, which held that "[Title VII's reasonable accommodation

requirement] does not require employers to accommodate the religious practices of an employee

in exactly the way the employee would like to be accommodated[,] [n]or does Title VII require

employers to accommodate an employee's religious practices in a way that spares the employee

any cost whatsoever."  Id. (quoting Pinsker v. Joint Dist. No. 29J of Adams and Rapahoe Ctys.,

735 F.2d 388, 390–91 (10th Cir. 1984)).

    In summary, FedEx presented McCray with a reasonable accommodation when it

mandated that she use her paid vacation and floating holiday time before using her unpaid time.

FedEx did not require that McCray *only* use her paid vacation time as part of her Sabbatical

Leave, but merely that she exhaust that time before moving to unpaid leave time.  McCray also

has failed to demonstrate that FedEx disciplined her in connection with her request for a

religious accommodation.  Her religious accommodation claim therefore fails as a matter of law.

    **D.**    **Title VII Retaliation**

        **1.**    **Substantive Law**

    In order to prove a prima face case of retaliatory discharge under Title VII, the plaintiff

must demonstrate the following:

> [T]hat 1) the plaintiff engaged in an activity protected by Title VII; 2) the exercise
> of the plaintiff's civil rights was known to the defendant; 3) the defendant
> thereafter undertook an employment action adverse to the plaintiff; and 4) there
> was a causal connection between the protected activity and the adverse
> employment action..

Virts v. Consol. Freightways Corp. of Del., 285 F.3d 508, 521 (6th Cir. 2002).  To establish

causation, the plaintiff "must produce sufficient evidence from which an inference could be

drawn that the adverse action would not have been taken had the plaintiff not filed a

discrimination action." <u>Nguyen v. City of Cleveland</u>, 229 F.3d 559, 563 (6th Cir. 2000).  A "but-for" causation standard applies to retaliation claims brought under Title VII.  <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 365 (2013).

If the plaintiff meets her burden of establishing a prima facie case of retaliation, the burden of production shifts to the defendant to produce a legitimate, non-discriminatory reason for its actions.  <u>Laster v. City of Kalamazoo</u>, 746 F.3d 714, 730 (6th Cir. 2014).  If the defendant meets its burden of production, the burden shifts to the plaintiff to demonstrate pretext, that is, that the "[defendant's] proffered reason was not the true reason for the employment decision." <u>Id.</u> (citing <u>Dixon v. Gonzalez</u>, 481 F.3d 324, 333 (6th Cir. 2007)).  At no time does the burden of persuasion shift to the defendant.  <u>Id.</u>

## 2.    McCray's Prima Facie Case

McCray did engage in several instances of protected activity.  She filed several internal complaints against FedEx employees, including an EEO internal complaint submitted sometime before August 6, 2015[16] (<u>see</u> McCray Dep., ECF No. 56-6 at PageID 312) and an EEOC intake questionnaire completed in January 2016, following the denial of her request for Sabbatical Leave[17] (<u>see</u> McCray Dep., ECF No. 61-9 at PageID 488–89).  McCray also testified that she filed several complaints against a coworker, Ron Seymour, for alleged sexual harassment.  (<u>See, e.g.</u>, McCray Dep., ECF No. 61-8 at PageID 432:11-25; PageID 433: 9-10; PageID 434: 10-25;

---

[16] This was the only document provided in connection with this Complaint.  The original complaint was not referenced by McCray in her Response to the Motion.  Defendant's Reply indicates that McCray engaged in two instances of protected activity on April 15 and June 10, 2015.  (<u>See</u> Email Correspondence between FedEx Counsel and Plaintiff's Counsel, ECF No. 62-1 at PageID 543.)

[17] McCray's deposition testimony refers to Exhibit 65 as the formal intake questionnaire.  However, the parties did not present the Court with this questionnaire.

PageID 436: 2-21.)  McCray testified that FedEx was made aware of the complaints, and her supervisors were also informed of her complaints.  (See id.)

McCray, however, cannot demonstrate that FedEx issued the Warning Letters against McCray because of her protected complaints.  Nassar, 570 U.S. at 365.  McCray also has provided insufficient evidence from which a jury could find that FedEx's legitimate, nondiscriminatory reasons for the issuance of those letters were a pretext for unlawful retaliation.[18]

As to McCray's first July 2015 Warning Letter, McCray has provided no evidence beyond her own belief or opinion that but for her 2015 complaints of sexual harassment FedEx would not have issued the Warning Letter.  (See, e.g., Response, ECF No. 61-1 at PageID 361– 62; McCray Dep., ECF No. 61-8 at PageID 469–70.)  McCray's assertions that her supervisors Wendy Retherford and Robin Simpson treated her differently from other employees, arbitrarily denied her requests for leave, and discriminatorily issued the Warning Letter following her violation of FedEx leave policy are subjective beliefs that cannot support a finding of retaliation. See Dean-Lis v. McHugh, 598 F. App'x 412, 414–15 (6th Cir. 2015) (finding that the plaintiff

---

[18] McCray's Response to FedEx's Motion suggests that she was disciplined for reporting these alleged incidents of sexual harassment.  (See ECF No. 61-1 at PageID 361, 382.)  Specifically, McCray alleges that she was denied a change of shift and that her supervisor denied the request on the grounds that she lacked seniority for the change "despite letting employees with less seniority move shifts."  (Id.)  McCray's denial of a shift change, however, does not constitute an adverse employment action absent accompanying evidence of the negative aspects typically associated with an adverse employment action.  See Mitchell v. Vanderbilt Univ., 389 F.3d 177, 183 (6th Cir. 2004) ("[W]here the sought position is a lateral transfer, without additional material benefits or prestige, it would be improper to conclude that a denial of such a transfer would be a materially adverse action."); see also Momah v. Dominguez, 239 F. App'x 114, 123 (6th Cir. 2007) ("[I]t would appear that a purely lateral transfer or denial of the same, which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes."); Santana v. U.S. Tsubaki, Inc., 632 F. Supp. 2d 720, 721 (N.D. Ohio 2009) ("A refusal to grant a shift change, as occurred here, is not an adverse employment action.").  Because Plaintiff has provided no evidence that the denial of her request for a change in shift to the night shift caused her to suffer loss of pay, benefits, or title, FedEx's denial of that request cannot constitute an adverse employment action.  Hensley v. Rutherford Cty., No. 3:14– cv–0138, 2015 WL 1549272, at *8 (M.D. Tenn. Apr. 8, 2015) (finding that denial of a request for a transfer did not constitute an adverse employment action because the plaintiff conceded that she did not suffer a loss of pay, benefits, or title).

failed to demonstrate causation because she provided only her subjective belief that the various actions taken against her by her employer were motivated by previously-filed EEO complaints); see also Carson v. Ford Motor Co., 413 F. App'x 820, 824 (6th Cir. 2011) (finding that that the plaintiff failed to show but-for causation because he provided nothing "other than his own conclusory allegations" and "[h]is subjective belief that [the defendant's] proffered reason is false, and that retaliation was the actual motive . . ." (citing Mitchell, 964 F.2d at 585).  (See Response, ECF No. 61-1 at PageID 361–62; see also McCray Dep., ECF No. 61-8 at PageID 461–66; PageID 467:1-5; PageID 469:14-25; PageID 470:1-19.)

McCray's causation argument with respect to her 2017 Warning Letter also fails.  (See Response, ECF No. 61-1 at PageID 365; see McCray Dep., ECF No. 61-9 at PageID 497–501.) McCray's conclusory assertion that numerous Time Card violations "had never been a reason to suspend anybody because it was so common for the clocks to . . . be inoperable" does not meet the but-for causation standard of retaliation.  See Mitchell, 964 F.2d at 585 ("[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law."); see also Carson, 413 F. App'x at 824 (same).  (McCray Dep., ECF No. 61-9 at PageID 497.)

McCray does point to one instance in which Wendy Retherford (who was no longer her manager at the time) emailed her regarding Time Card policy issues in March 2017.[19]  (McCray Dep., ECF No. 61-9 at PageID 494–96.)  Specifically, McCray testified that Janice Glenn, a FedEx Human Resources employee, told McCray that "Wendy should not have written me, her comment; that Wendy should not have been writing me and that she was going to talk to

---

[19] McCray has not provided the Court with Exhibit 77 or 78 from her deposition, the exhibits that detail these conversations.

Wendy." (Id. at PageID 496:15-18.)  McCray's bad interaction with her former boss or her poor working relationship with Retherford[20] by itself does not demonstrate that her complaints of discrimination from nearly two years prior were the but-for cause of FedEx's issuance of the Warning Letter, nor does Retherford's improper behavior demonstrate that Robin Simpson's issuance of the Warning Letter was motivated by retaliatory animus.  See Coulson v. The Goodyear Tire & Rubber Co., 31 F. App'x 851, 858 (6th Cir. 2002) ("Courts are not meant to act as a super-bureau of Human Resources.").  (See January 16, 2017 Warning Letter, McCray Dep., ECF No. 56-6 at PageID 321–22, Exh. 72.)

McCray also cannot rely on temporal proximity to demonstrate causation.  "[T]emporal proximately alone does not support an inference of retaliatory discrimination when there is no other compelling evidence."  Nguyen, 229 F.3d at 566; see also Cooper v. City of N. Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The record in this case contains no evidence directly linking the nine citations at issue to Cooper's filing of the OCRC discrimination charges.").  Nor has McCray provided sufficiently similar comparators to demonstrate a causal connection between the Warning Letters and her incidences of protected activity.  See Nguyen, 229 F.3d at 563 ("[E]vidence that defendant treated the plaintiff different from similarly situated employees . . . is relevant to causation."); see also Baker v. Barloworld Truck Ctr., No. 07-1028 B, 2008 WL 11411474, at *7 (W.D. Tenn. July 11, 2008) ("[P]ersonal belief, conjecture or speculation that overtime was being approved for others and not for him does not, even if believed by the Plaintiff, constitute competent evidence.").  See supra Sec. III.B.3.

---

[20] McCray's Response asserts that she "had already complained of retaliation from Wendy."  (ECF No. 61-1 at PageID 365.)  McCray has not directed the Court to any documentation of the complaint against Retherford. Regardless, if the complaint was filed in connection with Retherford's denial of her Sabbatical Leave request, Plaintiff has also failed to provide evidence establishing a causal connection between the complaint and Robin Simpson's decision to issue the Warning Letter.

### 3.      Pretext

McCray also cannot demonstrate pretext.  McCray has failed to "produce sufficient evidence from which a jury could reasonably reject [the defendant's] explanation" for its actions. Chen, 580 F.3d at 400.  Her conclusory and speculative accusations are insufficient to show pretext.  See Giles v. Norman Noble, Inc., 88 F. App'x 890, 895 (6th Cir. 2004) ("[C]onclusive allegations, hearsay, and subjective beliefs regarding racial bias" on the part of the plaintiff's employer are insufficient to demonstrate pretext.); see also Crawford v. Muvico Theaters, Inc., No. 04-2720 B, 2006 WL 522391, at *9 (W.D. Tenn. Mar. 2, 2006).

With respect to the July 2, 2015 Warning Letter, McCray asserts that FedEx disparately applied its policies to McCray.  (See McCray SOF, ECF No. 61-2 at PageID 387–88.)  McCray testified that "it was pretty common to take a day personal no pay . . . [a]nd people did it." (McCray Dep., ECF No. 61-8 at PageID 452:23-25–53:1-2, 455:19-21.)  McCray also testified that the "policy for call-in was that, even if you cannot work your shift, you have to call one hour before time.  Otherwise, it would be considered, you know, not acceptable."  (Id. at PageID 456:18-21.)  She felt that "anything that [Wendy and Robin] could come up with to try to suspend me or to write me up about, that's what they were doing. And I felt like it was wrong." (Id. at PageID 457:1-5.)

Neither McCray's unsubstantiated belief that she followed the correct leave-time policy nor her unsubstantiated contention that calling in the night before taking off a shift without pre-approval was an appropriate method to take leave could allow a reasonable jury to reject FedEx's explanation for the 2015 Warning Letter.  See Chen, 580 F.3d at 400; see also Mitchell, 964 F.2d at 585; Brown v. City of Franklin, 430 F. App'x 382, 387–88 (6th Cir. 2011) (plaintiff's

"unsubstantiated belief" that a policy statement made by a supervisor was a pretext for retaliation was insufficient to demonstrate pretext).

McCray's evidence also cannot overcome the significant evidence supporting FedEx's version of the events.  (See McCray Dep., ECF No. 56-6 at PageID 307–09.)  On June 18, 2015, Retherford informed McCray that her request for time off on July 2, 2015 would not be approved and that calling in the night before would run afoul of FedEx policy.  (Id. at PageID 309, Exh. 46.)  On June 19, 2018, Frank Olson, the Senior Manager of Hub Operations Support Services, also informed McCray that her exception request would be denied because it would "exceed our plan for the maximum number of Information Agents to be scheduled off for the third shift operation."  (Id. at PageID 307, Exh. 44.)  These communications occurred almost two weeks before McCray failed not show up for work on July 2, 2015.  (Id.)  Given both the lack of corroborating evidence supporting Plaintiff's allegations and the substantial documentation supporting FedEx's version of the events, McCray has failed to demonstrate that FedEx unlawfully retaliated against her in connection when it issued the July 2015 Warning Letter.  See Nguyen, 229 F.3d at 567.

McCray has also failed to create a genuine dispute of material fact as to whether FedEx's issuance of the January 2017 Warning Letter was a pretext for unlawful retaliation.  McCray argues in her Response that she did not violate the Time Card policy because the time clock in her work area was not functioning properly.  (ECF No. 61-1 at PageID 379.)  She testified that the time clock in her work area was "inoperable," making it impossible for her to clock in and out for the day.  (McCray Dep., ECF No. 61-9 at PageID 491–93.)  Assuming the truth of these assertions, these facts alone do not demonstrate pretext.  The law does not turn on whether FedEx ultimately made the right decision; the question under the applicable law is whether there

is evidence that FedEx's decision was motivated by retaliatory animus.  See Donald v. Sybra, Inc., 667 F.3d 757, 763 (6th Cir. 2012).  The Sixth Circuit adopts the "honest belief rule," and under that rule "it is not in the interests of justice for [the court] to wade into an employer's decisionmaking process."  Id. (citing Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 598–99 (6th Cir. 2007)).  Though McCray may disagree with FedEx's decision, McCray's disagreement does not demonstrate that FedEx' reasoned, well-supported and good faith belief that she violated company policy was a pretext for unlawful retaliation.  See Blizzard v. Marion Tech. College, 698 F.3d 275, 286 (6th Cir. 2012) ("[Plaintiff's] 'disagreement with [the defendant's] honest business judgment regarding [her] work does not create sufficient evidence of pretext in the face of the substantial evidence that [the defendant] had a reasonable basis to be dissatisfied." (quoting Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1116 (6th Cir. 2001))).  FedEx documentation establishes that McCray was aware of its Time Card policies, that FedEx warned McCray of her potential infractions and that she was aware of her infractions, and that FedEx provided a reasoned decision for her suspension that resulted in the issuance of the Warning Letter.   (See McCray Dep, ECF No. 56-6 at PageID 321–28.)  This finding is further supported by the fact that McCray does not specifically dispute that she did not properly clock in on the days listed in the Warning Letter.  (See McCray SOF, ECF No. 61-2 at PageID 388; see also FedEx SOF, ECF No. 56-2 at PageID 199.)

Finally, for similar reasons as described supra, the fact that Retherford sent an inappropriate email in March 2017 does not alone demonstrate pretext, especially given the significant evidence supporting FedEx's legitimate, non-discriminatory reason for finding McCray in violation of FedEx's Time Card Policy and the fact that ultimately the decision was not made by Retherford but by Robin Simpson.

In summary, McCray has not demonstrated that there is a genuine dispute of material fact as to whether FedEx unlawfully retaliated against McCray by issuing Warning Letters in July 2015 or January 2017.  Specifically, McCray has failed to demonstrate that there is an issue of fact that her complaints of sexual harassment were a but-for cause of the Letters, and that FedEx's legitimate, nondiscriminatory reasons were a pretext for retaliation.

Because the Court dismisses McCray's claims, it will not reach FedEx's arguments regarding her entitlement to back pay, front pay or punitive damages.

## V.     CONCLUSION

For the foregoing reasons, Defendant FedEx's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED**, this 12th day of August, 2020.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE